UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROWE PLASTIC SURGERY OF NEW JERSEY, L.L.C. & NORMAN MAURICE ROWE, M.D., M.H.A., L.L.C., <br><br> Plaintiffs, <br><br> -against- <br><br> AETNA LIFE INSURANCE COMPANY, <br><br> Defendant. | Case No. 1:23-cv-08504 (JLR) (OTW) <br><br> **OPINION AND ORDER** |

JENNIFER L. ROCHON, United States District Judge:

This is one of many cases brought by medical providers Rowe Plastic Surgery of New Jersey, L.L.C., and Norman Maurice Rowe, M.D., M.H.A., L.L.C. (together, "Plaintiffs"), against Aetna Life Insurance Company ("Defendant" or "Aetna"), arising out of a payment dispute over a surgery. *See generally* Dkt. 11 ("Amended Complaint" or "AC"). Aetna now moves to dismiss the Amended Complaint in its entirety for failure to state a claim pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). *See* Dkt. 57. For the reasons that follow, the Court grants Aetna's motion to dismiss.

I.   BACKGROUND

　A.　**Factual Background**[1]

Plaintiffs are plastic-surgery practices that are not part of Aetna's healthcare provider network. AC ¶¶ 10-11. Accordingly, Aetna reimburses Plaintiffs at an out-of-network rate for providing covered medical services to patients with an eligible Aetna health-insurance plan. *See id.* ¶¶ 11-12, 18. Aetna's out-of-network rate is not contractually predetermined

---

[1] Unless otherwise noted, the following facts are drawn from Plaintiffs' Amended Complaint and accepted as true for purposes of this motion. *See Cardinal Motors, Inc. v. H&H Sports Prot. USA Inc.*, 128 F.4th 112, 120 (2d Cir. 2025).

and is capped at an "allowed amount," which is based on either a percentage of the usual, customary, and reasonable rate ("UCR") of what providers in the same geographic area charge for a given service, or a multiple of the Medicare reimbursement rate. *Id.* ¶¶ 22-26.

On or about December 14, 2020, one of Plaintiffs' employees called Aetna to ascertain the rate at which Plaintiffs would be reimbursed by Aetna for providing a medically necessary reduction mammaplasty to a patient. *See id.* ¶¶ 13-14, 17-20. According to a transcript provided by Aetna,[2] an Aetna representative verified during this call that under the patient's plan, outpatient surgical procedures performed by out-of-network professionals are reimbursed at 80 percent of the UCR. *See* Dkt. 58-1 ("Tr.") at 12:3-14. The representative also outlined the patient's in- and out-of-network copays, deductibles, and out-of-pocket maximums, *see id.* at 10:8-12:20, although the details of the surgery, the price of the surgery, and any related services to be rendered as part of the surgery were not discussed during the call, *see generally id.*

---

[2] "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider . . . documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). "Where a document is not incorporated by reference, the court may neverless consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint," so long as it is "clear on the record that no dispute exists regarding the authenticity or accuracy of the document," or "the relevance of the document." *Id.* (first quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006); and then quoting *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006)). Here, the Court will consider the transcript of the December 14, 2020 call because it is integral to the Amended Complaint, which relies heavily on the call's terms and effect. *Accord Rowe Plastic Surgery of N.J., L.L.C. v. Aetna Life Ins. Co.* (*Rowe I*), 705 F. Supp. 3d 194 (S.D.N.Y. 2023), *aff'd*, No. 23-8083, 2024 WL 4315128 (2d Cir. Sept. 27, 2024) (summary order). Specifically, Plaintiffs allege that the call bound Aetna to reimburse Plaintiffs at a particular rate, thus creating an "agreement" on which Aetna failed to perform. AC ¶¶ 19-21, 36-40. Plaintiffs do not dispute the authenticity or relevance of the document; indeed, Plaintiffs argue that the transcript is consistent with and bolsters the allegations in their Amended Complaint. *See* Dkt. 61 ("Opp.") at 1-3.

On May 18, 2021, Plaintiffs performed the surgery, *id.* at ¶ 30, after which they submitted a bill to Aetna for $300,000 based on billing codes for various services rendered during the surgery and medical documentation. *Id.* ¶¶ 32-35. Ultimately, Aetna paid Plaintiffs a total of $8,759.71, which Plaintiffs allege was less than 80 percent of the UCR for the services rendered. *See id.* ¶¶ 36-38. Plaintiffs also assert that "Aetna did not properly apply industry coding standards," *id.* ¶ 57, although the Amended Complaint does not specify which billing codes were provided to Aetna or provide further detail as to how Aetna processed the billing codes, improperly or otherwise.

B.  **Procedural History**

On June 13, 2023, Plaintiffs initiated this action in the U.S. District Court for the Eastern District of New York, *see generally* Dkt. 1, and on August 28, 2023, Plaintiffs filed an Amended Complaint, asserting claims against Aetna for breach of contract, unjust enrichment, promissory estoppel, and fraudulent inducement, *see generally* AC. On September 27, 2023, this action was transferred to the U.S. District Court for the Southern District of New York pursuant to 28 U.S.C. § 1406(a). *See* Dkts. 15, 16.

On September 29, 2023, the Court referred this case to Magistrate Judge Wang for general pretrial management and to supervise discovery alongside several other *Rowe* cases in this District. *See* Dkt. 18. On December 22, 2023, Judge Wang entered a stay pending the resolution of an appeal in a similar case in this District brought by Plaintiffs against Aetna. *See* Dkts. 35, 36. *See generally Rowe Plastic Surgery of N.J., L.L.C. v. Aetna Life Ins. Co.* (*Rowe I*), 705 F. Supp. 3d 194 (S.D.N.Y. 2023), *aff'd,* No. 23-8083, 2024 WL 4315128 (2d Cir. Sept. 27, 2024) (summary order).

On December 9, 2024, Judge Wang lifted the stay, *see* Dkt. 43, and on December 23, 2024, Plaintiffs moved to amend their Amended Complaint, *see* Dkt. 46, which Aetna

3

opposed, *see* Dkt. 49.  On April 2, 2025, Judge Wang denied Plaintiffs' motion to amend pursuant to Rules 15 and 16 and set a briefing schedule for the instant motion to dismiss Plaintiffs' Amended Complaint.  *See* Dkt. 54 at 7 (concluding that "Plaintiffs did not exercise diligence in seeking amendment," "allowing amendment would prejudice Defendant," and "Plaintiffs . . . failed to show good cause (or, indeed, any cause) for amendment").

On April 15, 2025, Aetna moved to dismiss the Complaint.  *See* Dkt. 57; Dkt. 60 ("Br.").  Plaintiffs filed their opposition to the motion on April 21, 2025, *see* Dkt. 61 ("Opp."), and Aetna filed their reply on April 25, 2025, *see* Dkt. 65.  On April 21, 2025, Plaintiffs also moved to strike Aetna's memorandum of law for exceeding the word limit, *see* Dkts. 63, 64, which Aetna opposed on April 25, 2025, *see* Dkt. 66.  Both motions are fully briefed.

### C. Related Litigation

On December 11, 2023, Judge Rakoff issued a decision in *Rowe Plastic Surgery of New Jersey, L.L.C. v. Aetna Life Insurance Co.* (*Rowe I*), dismissing Plaintiffs' amended complaint with prejudice for failure to state a claim.  *See generally* 705 F. Supp. 3d 194. Although *Rowe I* involved a different patient, Plaintiffs' amended complaints in both *Rowe I* and the instant case assert the same four claims, based on similar allegations, and revolve around a single phone call with an Aetna employee.  *See Rowe I*, 705 F. Supp. 3d at 199. *Compare* AC ¶ 20 (alleging that Aetna employee "represented that it would reimburse the services rendered to [the patient] based upon 80% [of the UCR]"), *with* Amended Complaint ¶ 20, *Rowe I*, 705 F. Supp. 3d 194 (No. 23-cv-08521), ECF No. 13 (alleging that Aetna employee "represented that it would reimburse the services rendered to [the patient] based upon 80% [of the UCR]").

In *Rowe I*, Judge Rakoff considered a transcript of the phone call between Plaintiffs and Aetna.  705 F. Supp. 3d at 200.  Having reviewed the transcript, Judge Rakoff found that

4

"[Aetna]'s employee was merely recounting [the patient's] scope of coverage and benefit rates," and concluded that "no reasonable person would understand the representation about the reimbursement rate to be an offer to pay." *Id.* at 203.  Given the lack of an offer in the transcript or any other allegations of an offer in the amended complaint, Judge Rakoff dismissed Plaintiffs' breach-of-contract claim. *Id.*  Judge Rakoff also dismissed Plaintiffs' promissory-estoppel claim because Plaintiffs failed to allege "a clear and unambiguous promise," *id.* at 203-04; dismissed Plaintiffs' unjust-enrichment claim because Plaintiffs failed to allege that the surgery conferred a benefit on Aetna or was performed at Aetna's request, *id.* at 204-05; and dismissed Plaintiffs' fraudulent-inducement claim because the amended complaint did not sufficiently allege any fraudulent statements, *id.* at 205.  Plaintiffs subsequently appealed Judge Rakoff's decision, and on December 22, 2023, Judge Wang stayed discovery in the instant case and eleven other *Rowe* cases pending resolution of the appeal.  *See* Dkts. 35, 36.  On September 27, 2024, the Second Circuit affirmed Judge Rakoff's decision to dismiss the case.  *See Rowe Plastic Surgery of N.J., L.L.C. v. Aetna Life Ins. Co.* (*Rowe II*), 2024 WL 4315128, at *5.

**II.   Motion to Strike**

The Court first addresses Plaintiffs' motion to strike Aetna's memorandum of law in support of the motion to dismiss.  Plaintiffs chiefly argue that Aetna's memorandum, which is 8,678 words, exceeds the word limit set forth in the Court's Individual Rules.  *See* Dkt. 63 at 1; Dkt. 64 ¶¶ 3-4.  Plaintiffs appear to be referring to Judge Wang's Individual Rules, which set a 6,500-word limit for memoranda of law in support of and in opposition to motions.  The instant motion to dismiss was not referred to Judge Wang, however.  This Court sets a higher word limit of 8,750 words for memoranda of law, and Aetna has not exceeded this limit.  Plaintiffs further argue, citing no legal authority, that Aetna's memorandum should be

5

stricken because it "contains numerous statements that are impertinent, inflammatory, and serve no legitimate legal function." Dkt. 64 ¶ 7. Although Rule 12 permits a party to move to "strike from a *pleading* . . . any redundant, immaterial, impertinent, or scandalous matter," Fed. R. Civ. P. 12(f) (emphasis added), Aetna's memorandum is not a pleading, and in any case, the Court disagrees with Plaintiffs' characterization of the memorandum. Thus, putting aside the motion's procedural impropriety,[3] the Court denies Plaintiffs' motion to strike.

## III. Motion to Dismiss

### A. Legal Standard

"A complaint survives a Rule 12(b)(6) motion to dismiss if the facts, taken as true and with all reasonable inferences drawn in the plaintiff's favor, state a plausible claim to relief." *Sharikov v. Philips Med. Sys. MR, Inc.*, 103 F.4th 159, 166 (2d Cir. 2024) (citing *MacNaughton v. Young Living Essential Oils, LC*, 67 F.4th 89, 95 (2d Cir. 2023)). "In making that assessment," courts "'are not bound to accept as true a legal conclusion couched as a factual allegation,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Buon v. Spindler*, 65 F.4th 64, 76 (2d Cir. 2023) (citations omitted) (alteration in original) (first quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); and then quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

### B. Discussion

Plaintiffs' Amended Complaint must be dismissed because it suffers from the same infirmities identified by the Second Circuit in *Rowe II* — a decision that Plaintiffs fail to cite

---

[3] For example, Plaintiffs have not submitted a memorandum of law in support of their motion as required by Local Civil Rule 7.1. *See* S.D.N.Y. Loc. Civ. R. 7.1(a) ("All motions must include . . . [a] memorandum of law[] setting forth the cases and other authorities relied on in support of the motion . . . .").

and almost entirely ignore. The Court addresses Plaintiffs' four causes of action in turn against the backdrop of *Rowe II*.

First, as to Plaintiffs' breach-of-contract claim, the Second Circuit concluded that "together with the transcript," Plaintiffs' "allegations fall short of the definiteness typically required to create an offer, such as details of the specific service and the price or an explicit undertaking of a duty." *Rowe II*, 2024 WL 4315128, at *3 (citing *Sokoloff v. Harriman Ests. Dev. Corp.*, 754 N.E.2d 184, 187-88 (N.Y. 2001)). Because "[a]bsent an offer, there can be no contract between [Plaintiffs] and Aetna," the Second Circuit affirmed the district court's dismissal of Plaintiffs' breach-of-contract claim. *Id.* Here, too, both the Amended Complaint and the transcript of the call are devoid of any concrete factual detail indicative of an offer. Plaintiffs do not allege, and the transcript does not show, that the parties discussed the details of the surgery, the services to be rendered as part of the surgery, or specific prices for those services, nor do Plaintiffs plead any facts to support an inference that Aetna explicitly undertook a duty to pay for the surgery at a specific rate or otherwise. *See id.*

Plaintiffs argue that Aetna made a "clear and unqualified" promise to pay for the surgery when its representative stated that out-of-network surgeries under the patient's plan would be reimbursed at 80 percent of the UCR. *See* Opp. at 6-7; Tr. at 11:11-12:14. The Court is not convinced. Like the transcript reviewed by the district court in *Rowe I*, the transcript in the instant case makes clear that Aetna's representative "was merely recounting [the patient's] scope of coverage and benefit rates," which "[n]o reasonable person would understand . . . to be an offer or promise to pay a particular amount." 705 F. Supp. 3d at 203. Although Plaintiffs may have subjectively understood Aetna's generic recounting of the patient's benefits to constitute a unilateral offer to pay for the surgery, "[t]he parties' subjective intent is irrelevant." *Id.* at 202 (citing *Leonard v. Pepsico, Inc.*, 88 F. Supp. 2d 116,

7

127 (S.D.N.Y. 1999), *aff'd*, 210 F.3d 88 (2d Cir. 2000); *Rightnour v. Tiffany & Co.*, 239 F. Supp. 3d 744, 752 (S.D.N.Y. 2017)). Because "[a]bsent an offer, there can be no contract," Plaintiffs have not stated a claim for breach of contract. *Rowe II*, 2024 WL 4315128, at *3.

Plaintiffs' cause of action for promissory estoppel fares no better. In *Rowe II*, the Second Circuit concluded that Plaintiffs' "allegations, even with the benefit of the transcript's language, do not plead a clear and unambiguous promise." 2024 WL 4315128, at *4; *see Rowe I*, 705 F. Supp. 3d at 203 ("To adequately plead a promissory estoppel claim, the complaint 'must allege "a clear and unambiguous promise . . . ."'" (quoting *Cambridge Cap. LLC v. Ruby Has LLC*, 565 F. Supp. 3d 420, 457 (S.D.N.Y. 2021))). As the court explained, "[a] promise is not 'clear and unambiguous' where the allegations are premised on an ambiguity or where the alleged promise is conditional upon further agreements or negotiations." *Rowe II*, 2024 WL 4315128, at *4. Here, both the transcript and Plaintiffs' allegations demonstrate that Aetna verified the scope of the patient's out-of-network benefits during a single phone call, but there is no indication that Aetna "promised to pay a particular amount" for the surgery or any particular services, let alone every single service that could possibly have been rendered as part of the surgery. *Rowe I*, 705 F. Supp. 3d at 204; *see also id.* at 203 ("[W]ithin the medical insurance industry, an insurer's verification is not the same as a promise to pay[.]" (quoting *TML Recovery, LLC v. Humana, Inc.*, No. 18-cv-00462, 2019 WL 3208807, at *4 (C.D. Cal. Mar. 4, 2019))).

Plaintiffs have likewise not adequately pleaded a claim for unjust enrichment. "To prevail on an unjust enrichment claim, 'a party must establish that it conferred a benefit upon the other party, and that the party will retain that benefit without adequately compensating the first party therefor.'" *Id.* at 204 (quoting *Nasca v. Greene*, 187 N.Y.S.3d 773, 775 (App. Div. 2023)). In *Rowe II*, the Second Circuit determined that Plaintiffs failed to state a claim

8

because they "rel[ied] solely on allegations of an abstract and attenuated indirect benefit Aetna received," 2024 WL 4315128, at *3, and made "no allegations that Aetna requested their services," *id.* at *4. Here, too, Plaintiffs have not alleged any facts demonstrating or even supporting an inference that Aetna directly benefited from or asked Plaintiffs to perform the surgery, which is fatal to their unjust-enrichment claim.

Lastly, Plaintiffs fail to state a claim for fraudulent inducement because they "simply restate[] their breach of contract claim." *Id.* at *5. In relevant part, "[a] fraudulent inducement claim requires '(i) a material misrepresentation of a presently existing or past fact; (ii) an intent to deceive; (iii) reasonable reliance on the misrepresentation by appellants; and (iv) resulting damages.'" *Id.* (quoting *Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 62 (2d Cir. 2012)). "[A] fraud claim may not be used as a means of restating what is, in substance, a claim for breach of contract," and "general allegations that [Aetna] entered into a contract while lacking the intent to perform it are insufficient" to state a claim for fraudulent inducement. *Wall v. CSX Transp., Inc.*, 471 F.3d 410, 416 (2d Cir. 2006) (quoting *N.Y. Univ. v. Cont'l Ins. Co.*, 662 N.E.2d 763, 769 (N.Y. 1995)). Instead, the alleged "material misrepresentation must be 'collateral to the contract it induced.'" *Rowe II*, 2024 WL 4315128, at *5 (quoting *Wall*, 471 F.3d at 416). Plaintiffs have not made this showing. They allege that Aetna materially misrepresented the surgery's out-of-network reimbursement rate to induce Plaintiffs to perform the surgery, AC ¶¶ 77-82, but in *Rowe II*, the Second Circuit found that a nearly identical allegation was "insufficient to allege a misrepresentation 'collateral to' the allegations supporting [Plaintiffs'] breach of contract claim,'" 2024 WL 4315128, at *5. *Compare* AC ¶ 79 ("Aetna intentionally told [Plaintiffs] that it would calculate reimbursement using '80% reasonable and customary'" when it "knew its claims processing system had no capacity to ensure the claims . . . would be paid using 80%

9

reasonable and customary."), *with Rowe II*, 2024 WL 4315128, at *5 (finding insufficient Plaintiffs' allegation that "Aetna 'intentionally told' [Plaintiffs] that its 'reimbursement was based upon "80% Reasonable Customary"' when [Aetna] 'knew its claims processing system did not allow for payment using 80% Reasonable and Customary'"). Accordingly, as in *Rowe II*, Plaintiffs have "simply restated their breach of contract claim," 2024 WL 4315128, at *5, and the Amended Complaint thus fails to state a claim for fraudulent inducement.

In sum, Plaintiffs have failed to state a claim for breach of contract, promissory estoppel, unjust enrichment, or fraudulent inducement, and the Amended Complaint is thus dismissed in its entirety, with prejudice, pursuant to Rule 12(b)(6).

## IV. Request for Sanctions

The Court next addresses Aetna's request for sanctions pursuant to 28 U.S.C. § 1927 and the Court's inherent powers. Aetna seeks an award of attorneys' fees and costs incurred in defending against this litigation following the Second Circuit's decision in *Rowe II*, arguing that Plaintiffs and their counsel have engaged in sanctionable conduct by pursuing an "unreasonable and vexatious campaign of meritless litigation at great expense to Aetna." Br. at 23; *see id.* at 23-28. Plaintiffs, in turn, maintain that the instant case is "factually distinguishable" from *Rowe II* and emphasize that each case has involved different procedures, representations, and patients. Opp. at 25; *see id.* at 24-27.

"A district court may award attorneys' fees under its inherent authority 'when the losing party "has acted in bad faith, vexatiously, wantonly, or for oppressive reasons."'" *Trs. of N.Y. State Nurses Ass'n Pension Plan v. White Oak Glob. Advisors, LLC*, 102 F.4th 572, 614 (2d Cir. 2024) (quoting *Eisemann v. Greene*, 204 F.3d 393, 395 (2d Cir. 2000)). Similarly, under § 1927, a court may award attorneys' fees against an attorney who "multiplies the proceedings in any case unreasonably and vexatiously." *Revson v. Cinque &*

*Cinque, P.C.*, 221 F.3d 71, 79 (2d Cir. 2000) (quoting 28 U.S.C. § 1927). Under either authority, imposing sanctions requires "clear evidence that '(1) the offending party's claims were entirely without color, *and* (2) the claims were brought in bad faith — that is, motivated by improper purposes such as harassment or delay.'" *United States v. Prevezon Holdings, Ltd.*, 305 F. Supp. 3d 468, 478-79 (S.D.N.Y. 2018) (quoting *Eisemann*, 204 F.3d at 396).

      The Court will not impose sanctions here. "The bad faith requirement is a high bar to satisfy" and requires the Court to "provide a high degree of specificity in [its] factual findings." *Id.* at 483. Aetna contends that Plaintiffs' "extended record of . . . litigation," even after the Second Circuit's decision in *Rowe II*, "makes clear their intent was solely to harass Aetna, delay this litigation, and try to force settlement." Opp. at 33. But Plaintiffs have supplied no evidence, beyond Plaintiffs' poor track record in prosecuting similar cases in this Circuit, that would support a finding of bad faith with the requisite degree of specificity necessary to impose sanctions. *Cf. Liebowitz v. Bandshell Artist Mgmt.*, 6 F.4th 267, 284 (2d Cir. 2021) (upholding award of sanctions where district court "had ample factual support" for finding that counsel failed to properly investigate claims before bringing lawsuit and "actively stonewalled" discovery to "extract settlements"); *Hong v. Mommy's Jamaican Mkt. Corp.*, No. 20-cv-09612 (LJL), 2024 WL 3824394, at *14 (S.D.N.Y. Aug. 14, 2024) (awarding sanctions where counsel made "flat-out misstatements of fact . . . to the Court on numerous occasions" to prolong proceedings). While the Second Circuit's decision in *Rowe II* may have cast serious doubt on the continued viability of Plaintiffs' claims, Plaintiffs did try, albeit unsuccessfully, to amend their complaint for the second time to correct potential deficiencies, and Judge Wang provided a briefing schedule for the present motion to dismiss. *See* Dkt. 54; *cf. EscapeX IP, LLC v. Google LLC*, No. 23-cv-10839 (VSB) (VF), 2025 WL 893739, at *9 (S.D.N.Y. Mar. 24, 2025) (imposing sanctions where counsel, "[w]hen confronted with the

11

complaint's fundamental flaws, . . . had a duty to act promptly to correct or dismiss the action, yet he failed to do so"). Given this record, the Court denies Aetna's request for sanctions.

## CONCLUSION

For these reasons, the Court GRANTS Plaintiffs' motion to dismiss and DENIES Aetna's request for sanctions. Plaintiffs' Amended Complaint is hereby DIMISSED with prejudice for failure to state a claim. The Clerk of Court is respectfully directed to terminate the pending motions at Dkts. 57 and 63 and close the case.

Dated: June 6, 2025
       New York, New York

                                      SO ORDERED.

                                      JENNIFER L. ROCHON
                                      United States District Judge